IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:08-cv-00535-W

AVALON CENTER INVESTMENT )
COMPANY; CONCORD COMMONS )
LIMITED PARTNERSHIP; HASTINGS )
VILLAGE INVESTMENT COMPANY, )
LP; and LARKEY-WRIGLEY, )
 )
    Plaintiffs, )
 ) ORDER
  vs. )
 )
COMMERCIAL DEFEASANCE, LLC, )
and DEFEASANCE HOLDING )
COMPANY, LLC, )
 )
    Defendants. )
 )

THIS MATTER is before the Court on Plaintiff's Motion for Class Certification (Doc. No. 81). The motion has been fully briefed by the parties (Docs. Nos. 82, 85, and 93), and on May 3, 2010, the Court conducted a hearing, whereby counsel for the parties provided oral argument on the pending motion. For the reasons that follow, the Court DENIES Plaintiff's motion.

I. B<small>ACKGROUND</small>[1]

Plaintiffs are former owners of mortgaged commercial real estate. According to Plaintiffs' pleadings, the banks holding mortgage loans on Plaintiffs' properties sold the loans so they could be securitized and sold to investors as bonds. The bonds were then secured by the mortgaged property and by Plaintiffs' (as property owners) legal obligations to make payments on the mortgage. To ensure steady bond payments to investors, the terms of these commercial mortgage

___

[1]The following background summary is taken from the parties' pleadings, including the Consolidated Class Action Amended Complaint (Doc. No. 36), as well as the briefs on the instant motion (Docs. Nos. 82, 85, and 93) and the exhibits attached thereto. In large part, the background is undisputed between the parties.

loans subject to securitization generally prohibit pre-payment. The loan notes previously held by Plaintiffs Avalon, Concord Commons, and Larkey did not allow for the mortgages to be paid off until several months prior to maturity. Plaintiffs contend the loan note held by Plaintiff Hastings did not allow for any pre-payment at all; however, Defendants have provided evidence that the loan was in fact prepaid. These pre-payment restrictions limited Plaintiffs' options for selling or refinancing their commercial properties.

Through a process known as defeasance, borrowers such as Plaintiffs set up alternative payment arrangements for their loans so that the borrowers can sell or refinance their commercial properties prior to the maturation of their loan. Defeasance is the release of the real property secured under a loan in exchange for the substitution of replacement collateral. As part of the defeasance transaction, borrowers like Plaintiffs use the proceeds from the refinance or sale of the mortgaged commercial property to purchase a collateral portfolio of United States government securities. This portfolio of securities, which must be sufficient to make all of the remaining debt service payments under the existing loan, becomes substitute collateral for the previously secured commercial real estate. Once the borrower buys the substitute collateral, the borrower then assigns that substitute collateral and all rights and obligations under the original loan to a successor borrower. The original borrower then receives its original collateral–the commercial property–free and clear of any lien, and the successor borrower becomes responsible for payment of the loan.

During 2005, Plaintiffs retained Defendant Commercial Defeasance to assist Plaintiffs in the defeasance of their loans. In doing so, Plaintiffs executed a standard Engagement Agreement, which included, among other things, Defendant's fee arrangement. Plaintiffs contend that in setting up this fee arrangement, Defendant Commercial Defeasance assumed certain duties and obligations to affirmatively disclose all material facts related to the defeasance of Plaintiffs' properties, yet failed

to do so. For example, Plaintiffs allege that Commercial Defeasance failed to disclose that its affiliated companies, including Defendant Defeasance Holding Company, own and control the successor borrowers. Additionally, Plaintiffs allege that the Accountants' Reports prepared by Commercial Defeasance set out a "false portrait of how plaintiffs' defeasance collateral will actually be used." Specifically, Plaintiffs contend that instead of paying off each of Plaintiffs' loans as represented by the Accountants' Reports, Commercial Defeasance and Defeasance Holding Company (collectively, Defendants) structured the defeasances to take advantage of hidden value generated by the substitute collateral. Plaintiffs contend Defendants created and carried out a scheme to capture the "float value" (obtained when the receipts from the government securities/substituted collateral have maturity dates that do not match up with loan payment dates, thus creating an interest-earning opportunity on receipts before they are later used for loan payment) and "residual value" (obtained when Defendants prepay the loan, convert the excess collateral to cash, and thereby take a profit). As a result, some loans that could be pre-paid after defeasance generated a "residual value," while all defeased loans, whether they could be prepaid or not, generated a "float" value that existed once the loan is paid. Defendants never disclosed these potential profits to Plaintiffs.

Plaintiffs filed this action for claims for breach of contract, breach of fiduciary duty, constructive fraud, unfair and deceptive trade practices, and common law fraud. The Court has already dismissed the majority of Plaintiffs' claims under its Amended Complaint so that the sole remaining claim is for unfair and deceptive trade practices under North Carolina statutory law. Plaintiffs now move this Court to certify this case as a class action.

## II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 23, certification of a class is a two-step process. First, the proposed class must satisfy the four requirements established in Rule 23(a):

> **(a) Prerequisites.** One or more members of a class may sue or be sued as representative parties on behalf of all members only if:
>
> > **(1)** the class is so numerous that joinder of all members is impracticable;
> >
> > **(2)** there are questions of law or fact common to the class;
> >
> > **(3)** the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> >
> > **(4)** the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); see also Gunnells v. Healthplan Serv., 348 F.3d 417, 423 (4th Cir. 2004). "These basic prerequisites are commonly referred to as numerosity, commonality, typicality, and adequacy, respectively." Farrar & Farrar Dairy, Inc. v. Miller-St. Nazianz, Inc., 254 F.R.D. 68, 71 (E.D.N.C. 2008).

Second, the proposed class must fall within one of three categories enumerated in Rule 23(b). Here, Plaintiffs seek class certification under Rule 23(b)(3), which provides that a class action is appropriate where:

> **(3)** the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;

> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

In class actions brought under Rule 23(b)(3), common issues must predominate over individual ones and class action must be superior to other available methods of adjudication. Gunnells, 348 F.3d at 423. "The party seeking class certification bears the burden of proof on the predominance and superiority requirements." Farrar & Farrar Dairy, Inc., 254 F.R.D. at 71-72 (E.D.N.C. 2008) (citing Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 321-22 (4th Cir.2006); Gregory v. Finova Capital Corp., 442 F.3d 188, 190 (4th Cir.2006)). "At bottom, it tests whether the proposed class is 'sufficiently cohesive to warrant adjudication by representation,' . . . and whether certification would increase judicial economy." Farrar & Farrar Dairy, Inc., 254 F.R.D. at 72 (quoting Amchem Products, Inc. v. Windsor, 521 U.S. 591, 623 (1997)).

"In determining whether to certify a class action, a court should interpret Rule 23 in such a manner as to promote justice and judicial efficiency . . . . A district court must therefore take a close look, and engage in rigorous analysis." Farrar & Farrar Dairy, Inc., 254 F.R.D. at 72 (citations omitted). Ultimately, "A district court has broad discretion in deciding whether to certify a class." Thorn v. Jefferson-Pilot Life Ins. Co., 445 F.3d 311, 317 (4th Cir. 2006) (quoting Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001)).

### III. ANALYSIS

After careful and rigorous analysis of Plaintiffs' claim as applied to the requirements of Rule 23, the Court does not find that Plaintiffs' proposed class certification is appropriate or promotes justice and judicial efficiency. Rather, this appears to be one of those cases where the proposed

classes are "no more than a hodgepodge of factually as well as legally different plaintiffs, that should not [be] cobbled together for trial." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 343 (4th Cir. 1998) (internal citation omitted).

Plaintiffs propose two classes:

1. The "Pre-payment" class that Plaintiffs Avalon, Concord Commons, and Larkey seek to represent is defined as follows: All persons and entities who are citizens of the United States, as well as any predecessors, successors, members, partners, shareholders, or assignees of such persons or entities, who: (1) executed written Engagement Agreements with Commercial Defeasance substantially similar to the above-named Plaintiffs; (2) closed defeasances on one or more loans pursuant to such contracts on or after September 7, 2003; (3) held notes that allowed pre-payment of the loan(s) after defeasance; (4) are not signatory to present value payment or sharing agreement contracts with Defendants or their affiliates; and (5) have been damaged by Defendants' failure to disclose the residual and float value generated by class members' defeasances.

2. The "Float" sub-class that Plaintiff Hastings seeks to represent is defined as follows: All persons and entities who are citizens of the United States, as well as any predecessors, successors, members, partners, shareholders, or assignees of such persons or entities, who: (1) executed written Engagement Agreements with Commercial Defeasance substantially similar to the above-named Plaintiff; (2) closed defeasances on one or more loans pursuant to such contacts on or after September 7, 2003; (3) held notes that prohibited pre-payment of the loan(s) after defeasance; (4) are not signatory to present value payment or sharing agreement contracts with Defendants or their affiliates; and (5) have been damaged.

The burden is on Plaintiff to satisfy all the prerequisites of Rule 23(a) and at least one of the categories outlined under Rule 23(b).[2] If each of these prerequisites is met, then the putative class must show that it fits into one of three categories set forth in Rule 23(b); if the class fails to qualify under Rule 23(a), then a determination under Rule 23(b) is unnecessary. Here, the parties seem to agree and the evidence tends to show that Plaintiffs satisfy the numerosity requirement of Rule

---

[2] "No class that fails to satisfy all four of the prerequisites of Rule 23(a) may be certified, and each class meeting those prerequisites must also pass at least one of the tests set forth in Rule 23(b)." Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998). See also Gariety v. Thornton, 368 F.3d 356, 362 (4th Cir. 2004).

23(a). Thus, the Court turns its analysis to the remaining factors: commonality, typicality, and adequacy of representation.

A.  Commonality and Typicality Under Rule 23(a)

"The typicality and commonality requirements of the Federal Rules ensure that only those plaintiffs or defendants who can advance the same factual and legal arguments may be grouped together as a class." Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 340 (4th Cir. 1998) (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 341 (7th Cir.1997)).  The last three requirements under Rule 23(a) "'tend to merge' with commonality and typicality 'serv[ing] as guideposts for determining whether . . . maintenance of a class action is economical and whether the named plaintiff[s'] claim[s] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" Broussard, 155 F.3d at 337 (quoting General Tel. Co. v. Falcon, 457 U.S. 147, 157 n.13 (1982)).

There are several instances here where Plaintiffs have not demonstrated commonality and typicality among the proposed classes, including those portions of Plaintiffs' claim relating to: (1) representations or omissions, and (2) damages.  Because the Court has already dismissed all claims related to the written contract among the parties, the sole remaining claim for unfair and deceptive trade practices deals with unwritten representations, or the lack thereof, made outside of the written contractual agreement.  In Broussard, the Fourth Circuit noted that tort claims based on oral communications are a "particularly shaky basis for a class claim." 155 F.3d at 341.  The Broussard court agreed with and applied a holding from a case out of the Seventh Circuit, Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 597 (7th Cir. 1993), where that court had concluded that "claims based substantively on oral rather than written communications are inappropriate for treatment as class actions unless the communications are shown to be standardized." 155 F.3d at

341. Additionally, Broussard also referred to a case out of the Sixth Circuit, Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998), to demonstrate the fact that the lack of a uniform promise may be fatal to class certification. Although Sprague dealt with breach of contract issues, the Sixth Circuit found that the "commonality" and "typicality" requirements of Rule 23(a) were not met and stated:

> GM had made an individual 'side deal' with each early retiree. Each putative side deal involved any pertinent document the retiree might have signed . . . as well as any pertinent representations GM might have made to the retiree, whether orally, in writing, or both. . . . Proof that GM had contracted to confer vested benefits on one early retiree would not necessarily prove that GM had made such a contract with a different early retiree. . . . Given these myriad variations, it seems to us that the plaintiffs' claims clearly lacked commonality. . . . A named plaintiff who proved his own claim would not necessarily have proved anybody else's claim. . . . The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class. That premise is not valid here.

Sprague, 133 F.3d at 398-99.

Plaintiffs contend that Defendant Commercial Defeasance's common course of conduct of failing to make affirmative disclosures concerning float and residual values will either prove to be a violation of the statute on unfair and deceptive trade practices or not. The problem with Plaintiffs' argument is that it relies on the premise of a "common course of conduct" that Defendants failed to inform customers of potential profits Defendants might make in the defeasance process. Here, Plaintiffs have not demonstrated that precontract negotiations or representations by Defendants prior to or outside of the contract were standardized. In fact, the evidence tends to show that such negotiations were individualized and sometimes determined on a case-by-case basis (the "don't ask-don't tell" theory suggested by Plaintiffs). Additionally, the evidence shows that as early as 2006, which falls during time frame covering Plaintiffs' proposed class, Defendant Commercial Defeasance began distributing marketing materials advertising "Residual Sharing Opportunities"

and also began discussing sharing agreement opportunities with many of their potential customers as part of contract negotiations. Although Defendants' customers who are "signatory to present value payment or sharing agreement contracts" are excluded from the proposed classes, neither of the proposed classes exclude class members who: (1) knew about or were aware of the potential for residual or float value or sharing agreements, (2) asked Defendants about residual or float value or sharing agreements, or (3) rejected offers to enter into sharing agreements. Plaintiffs' claim for unfair and deceptive trade practices necessarily requires consideration of each individual transaction and the oral representations–or lack thereof–made to each customer. As a result, there is a distinct possibility that at least some of these putative class members had materially different discussions with Defendant Commercial Defeasance concerning "float," "residual," or "sharing agreements" leading up to the defeasance and therefore, are not likely victims of any unfair and deceptive trade practices as alleged by Plaintiffs, but would nevertheless still be included in the class claim.

The variety of information provided to customers during the relevant time period shows that Defendants' representations were dissimilar and not standardized. See Thorn, 445 F.3d at 319 ("A question is not common . . . if its resolution 'turns on a consideration of the individual circumstances of each class member.'") (quoting 7A Charles Allen Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1763 (3d ed. 2005)). Thus, because Defendants' alleged promises or omissions to Plaintiffs and the proposed class members were not uniform, Plaintiffs have not satisfied the commonality and typicality requirements. See Rose v. SLM Financial Corp., 254 F.R.D. 269 (W.D.N.C. 2008) (denying class certification in case involving, among other claims, cause of action for unfair and deceptive trade practices under N.C. Gen. Stat. § 75-1.1 and noting that claim for "unfair" or "deceptive" act or practice would likely fail where the plaintiff's proposed

class definition fails to take into account the understanding of the individuals in each loan transaction).

Plaintiffs contend that the similar or uniform documents were used to govern the defeasance of Defendants' customers, thus showing commonality and typicality. Even so, it is not the contract–or the breach of such contract–that is before this Court. Instead, the gravamen of Plaintiffs' claim is that their defeased loans could have generated an undisclosed profit for Defendants, either through prepayment and/or float value, and that such profits were hidden from Plaintiffs for the duration of their business relationship with Defendants. It is difficult to conceive that this Court might analyze the specifics of Plaintiffs' transactions in evaluating liability on their claims for unfair and deceptive trade practices and make a ruling applicable to a class of hundreds where the evidence as to the underlying (original) loan documents, the conversations between Defendants and its customers, and the customers' reasons for entering into the defeasance transactions all require individualized consideration.

Damages are another area where Plaintiffs cannot show commonality and typicality. Both proposed classes would include members who "have been damaged by defendants' failure to disclose the [residual and/or float value] generated by class members' defeasances." While Plaintiffs concede that individual damage amounts for each Plaintiff are not identical, Plaintiffs argue that because Defendants have a computer program that can calculate residual and float value, those values, which Plaintiffs' contend reflect damages, can be easily obtained. Nevertheless, even if the residual or float values could be easily determined, that reason alone is insufficient to show the commonality and typicality of damages and is an inadequate basis to certify the classes. Additionally, although a residual or float value existed, Defendants identify several instances where such values were so minimal that the successor borrower did not prepay loans that possibly could

have been prepaid. Accordingly, the otherwise easily calculable damages would still require an individualized analysis of the underlying loan documents and an individualized determination for each defeased loan as to whether it was actually prepaid.

If Plaintiffs had established commonality and typicality with the proposed class members, the damages issue might not be a hurdle to class certification. However, without any such showing, there is a distinct possibility that some class members might have been damaged by the alleged unfair and deceptive practices of Defendants, while some class members may not have been damaged. It is difficult, if not impossible, to perceive how the damages analysis could avoid inquiry into a variety of factors for each class member.

B.  Adequacy of Representation Under Rule 23(a)

Even if Plaintiffs could show commonality and typicality, which the Court has already ruled they cannot, Defendants have a strong argument that the Plaintiffs here could not adequately represent the proposed Float Class.[3] Most notable is the lack of an adequate representative for the float class. "'"A litigant must be a member of a class which he or she seeks to represent at the time the class action is certified by the district court."'" Riemer v. Columbia Medical Plan, Inc., 43 Fed. Appx. 576, 578 (4th Cir. 2002) (quoting Holt v. Moore, 541 F.2d 460, 462 (4th Cir. 1976) (quoting Sosna v. Iowa, 419 U.S. 393 (1975))). Here, Plaintiffs propose that Plaintiff Hastings can represent the Float Class, which involves borrowers whose loans were not prepaid. Defendants have shown, however, that Hastings' loan was prepaid, thus making it an inadequate representative for that class.

---

[3] The parties do not seem to dispute that Plaintiffs could adequately represent the proposed "Prepayment" class. Because, however, Plaintiffs cannot satisfy the commonality and typicality required under Rule 23(a) for either of the two proposed classes, the satisfaction of this requirement is inconsequential.

C.   Predominance and Superiority Under Rule 23(b)

Although failure to satisfy one of the prerequisites of Rule 23(a) is sufficient to deny certification of the proposed class, the Court will also briefly address Plaintiffs' argument pursuant to Rule 23(b)(3).

> Rule 23(b)(3) has two components: **predominance** and **superiority**. The **predominance** requirement is similar to but "more stringent" than the commonality requirement of Rule 23(a). Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 n. 4 (4th Cir. 2001). Whereas commonality requires little more than the presence of common questions of law and fact, see id. at 146, Rule 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance requirement "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004) (internal quotation marks omitted). The **superiority** requirement ensures that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

Thorn, 445 F.3d at 319 (emphasis added).

In support of their arguments on predominance and superiority, Plaintiffs contend that no individual issues predominate and also point to authority showing that courts have held that classes based on form documents and a uniform course of conduct by a defendant are particularly suited to a Rule 23(b) certification. See Plaintiffs' Memorandum in Support of Mtn. For Class Certification (Doc. No. 82), p. 21 (citing, *inter alia*, Chisolm v. Transouth Financial Corp., 184 F.R.D. 556, 565 (E.D. Va. 1999)). The Court has already addressed the issue of a "uniform course of conduct" under the facts of this case and rejected it. Here, individualized questions predominate this litigation.

Even if the classes were certified, the fact finder will need to determine for each defeased loan whether the successor borrower prepaid or will prepay the customer's loan, whether Defendants discussed residual and float with the customer (and if not, whether the customer was otherwise

aware of those values), whether the customer wanted to or would have been able to enter into a sharing agreement with the successor borrower (and what terms of such a sharing agreement would be), whether any failure to disclose float and residual was unfair or deceptive, and whether the customer suffered any damages, and if so, how those damages should be calculated. In order to defend against the class claims and resolve these issues, Defendants could seek to depose each plaintiff and others involved in each defeasance transaction, thus presenting a likely difficulty in managing this case as a class action. Consequently, a class action, as opposed to individual actions, does not provide a superior method for resolving these claims.

## IV. Conclusion

The Court recognizes, as did the Fourth Circuit in Broussard, that a class action might be the most economical method for litigating claims similar to Plaintiffs' claim because of the possibility that some of Defendants' customers' loans generated a minimal residual or float value during defeasance and, for those customers at least, the cost of litigation outweighs any possible recovery. However, this Court's certification of the proposed classes is guided by Rule 23, and Plaintiffs simply have not satisfied the Rule's requirements for either of the two proposed classes. Borrowing from the Sprague case out of the Sixth Circuit, this Court finds that "'some class members may have signed the same form, some may have received the same documents, or some may have attended [similiar or the same] meetings . . . but taken as a whole the class claims [are] based on widely divergent facts.'" Broussard, 155 F.3d at 344 (quoting Sprague, 133 F.3d at 399)). Accordingly, as in Broussard and Sprague, the disparate nature of Plaintiffs' claims here precludes class treatment. See id.

In sum, it would be inappropriate to rule on Plaintiffs' claims without considering the unique circumstances surrounding the defeasance transactions for individual class members.[4]

IT IS, THEREFORE, ORDERED that Plaintiffs' Motion for Class Certification (Doc. No. 81) is DENIED.

IT IS SO ORDERED.

Signed: May 20, 2010

Frank D. Whitney
United States District Judge

---

[4] The Court recognizes that Plaintiffs filed a Memorandum of Subsequent Authority (Doc. No. 101); however, in light of the Court's ruling and because the Court's resolution of the motion at bar did not rely on issues addressed in the case cited by Plaintiffs, the Court finds it inapplicable and declines to address it further.